## STANDARD TOWING CORPORATION v.

### THE WATHEN et al.

### THE SOUTHERN CROSS.

### THE WATHEN.

### THE WATHEN CORPORATION OF BALTIMORE.

#### No. 16769.

District Court, E. D. New York.
April 28, 1944.

Mahar & Mason and Frank Mason, both of New York City, for libellant.

Horace T. Atkins, of New York City, for claimant.

CAMPBELL, District Judge.

This libel was filed to recover for collision damages.

On the morning of January 7, 1943 the Tug Southern Cross, owned by the libellant, left Pier 95, North River, bound for the slip between Piers 1 and 2.

The Tug ran light, the purpose being to enter the slip between Piers 1 and 2 and there change crew.

It was a clear day, visibility good, and at the time she approached the lower end of the North River the tide was flood running about a mile an hour. She proceeded down the river at about 250 feet off the pier ends of the New York shore, and was somewhat behind time. She was hooked up, and when off about Pier 3, she slowed down to half speed, and, as she approached Pier 2, she saw that there was a ship lying along the south side of that pier, the stern of which extended out beyond the pier ends by approximately 50 feet.

As she approached Pier 2, she did not hear a whistle from any other ship.

As the Southern Cross approached the north end of Pier 2, she saw the Tug Wathen backing out. She immediately stopped her engines, put them in reverse, and sounded an alarm, but, of course, the Southern Cross continued in forward movement, drifting.

On the same morning the Tug Wathen left Morris Street, Jersey City, for Pier 1, North River. When she arrived she went in, tied up in the head of the slip, to take water and get stores. After that, the Tug Wathen started to back out of the slip bound for Morris Street, Jersey City.

The Tug was properly manned, and the Captain says that he was maintaining a lookout aft.

The lines were cast off, and the Wathen started to back out, and it is contended on her behalf, that when she was in position nearing the ends of Piers 1 and 2, her engines were stopped, and a slip whistle was blown.

Of course, greater weight must be given ordinarily to the testimony of those on the vessel sounding signals than those on another vessel who say they did not hear the signals, but, the uncertainty of the testimony of the various witnesses called on behalf of the Wathen, as to where her stern was with reference to the ship on the south side of Pier 2, which extended beyond the pier ends at the time they say the slip whistle was sounded, makes it quite clear to me that the slip whistle was not sounded before the stern of the Wathen had gone beyond the pier ends, and I am convinced that the Wathen did sound a long one blast signal, but that it certainly was not sounded until after she had been seen by the Southern Cross, and the Southern Cross had sounded an alarm.

Both vessels were in movement at the time, and the collision occurred. The stem of the Southern Cross came into collision with the port quarter of the Wathen doing damage to the Southern Cross.

The Wathen, having backed out beyond the pier ends, before sounding any slip whistle, it seems to me that within the short period of time which elapsed that the collision became inevitable, and was solely the fault of the Wathen in not seasonably sounding her slip whistle.

Some complaint is made on the part of the Wathen that the Southern Cross was only 250 feet off the pier ends. That, it does not seem to me, was a fault to which complaint could properly be made, because the Southern Cross was bound into the slip between Piers 1 and 2, and naturally would be nearing the entrance of the pier in order that she might enter.

The Wathen is solely at fault.

The Southern Cross is without fault, and a decree should be entered in favor of the libellant with costs and the usual order of reference.